DARIN B. GOFF (11355)
BRADLEY R. BLACKHAM (8703)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorneys General
160 East 300 South, 6th Floor
PO Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801)366-0100
Facsimile: (801) 366-0101
E-mail:  dgoff@agutah.gov
         bblackham@agutah.gov

*Attorneys for Defendants*

---

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOHN and JANE DOE, personally and on behalf of their minor child JD,<br><br>Plaintiffs,<br><br>v.<br><br>ALPINE SCHOOL DISTRICT, SHANE FARNSWORTH, an individual,<br>JEFF SCHOONOVER, an individual, JOHN WALL WORK, an individual,<br>and JOSEPH ATWOOD, and individual, and DOES I-V,<br><br>Defendants. | **DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>Case No. 2:22-CV-00632<br><br>Judge Jill N. Parrish |

Pursuant to Fed. R. Civ. P. 12(b)(6) and DUCiv R 7-1, Defendants move to dismiss the Complaint filed by Plaintiffs.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii
RELIEF SOUGHT AND GROUNDS FOR MOTION ............................................................ 1
FACTUAL BACKGROUND .................................................................................................. 1
LEGAL STANDARD .............................................................................................................. 3
ARGUMENT ............................................................................................................................ 5
   1.  Defendants Did Not Violate Plaintiffs' Rights Under Either the First or Fourteenth Amendments ................................................................................................................. 5
      1.1   The Free Exercise Clause of the First Amendment Is Not Implicated ............... 5
      1.2   John and Jane Doe Do Not Have a Substantive Due Process Right to Have Their Son Shielded from Making Personal Choices that Do Not Comport with His Family's Religious Beliefs ........................................................................... 9
   2.  Plaintiffs' Negligence Claim is Barred by the GIA.................................................... 13
CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Anspach v. City of Philadelphia, Dept. of Pub. Health,*
  503 F.3d 256, (3rd Cir. 2007) .................................................................................... 5, 6, 8

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .............................................................................................................. 4

*Asset Acceptance LLC v. Utah State Treasurer,*
  367 P.3d 1019 (Utah Ct. App. 2016) ................................................................................. 12

*Atiya v. Salt Lake,*
  852 P.2d 1007 (Utah Ct. App. 1993) ................................................................................. 13

*Axson-Flynn v. Johnson,*
  356 F.3d 1277 (10th Cir. 2004) ............................................................................................ 5

*Bauchman v. West High Sch.,*
  132 F.3d 542 (10th Cir. 1997) .............................................................................. 5, 6, 9, 12

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .............................................................................................................. 4

*Bowen v. Roy,*
  476 U.S. 693 (1986) .......................................................................................................... 6, 8

*Brown v. Hot, Sexy & Safer Prods., Inc.,*
  68 F.3d 525 (1st Cir. 1995) ................................................................................................ 10

*Corder v. Lewis Palmer Sch. Dist. No. 38,*
  566 F.3d 1219 (10th Cir. 2009) ............................................................................................ 5

*Cunningham v. Weber Cnty.,*
  506 P.3d 575 (Utah 2022) .................................................................................................. 12

*Fields v. Palmdale Sch. Dist.,*
  427 F.3d 1197 (9th Cir. 2005) ........................................................................................ 9, 10

*Gee v. Pacheco,*
  627 F.3d 1178 (10th Cir. 2010) ............................................................................................ 4

*Gunter v. North Wasco Cnty. Sch. Dist. Bd. of Educ.,*
  577 F. Supp. 3d 1141, (D. Or. 2021) ................................................................................. 10

*Hall v. Witteman,*
  584 F.3d 859 (10th Cir. 2009) .............................................................................................. 4

*Hernandez v. C.I.R.,*
  490 U.S. 680 (1989) .............................................................................................................. 5

*Jensen v. Gale,*
  2014 WL 7246948 (D. Utah Dec. 18, 2014) ..................................................................... 13

*Jones v. Boulder Valley Sch. Dist.* Re-2,
  2021 WL 5264188 (D. Colo. Oct. 4, 2021) ................................................................ 11, 12

*Keller v. Alpine Sch. Dist.,*
  2021 WL 1087383 (D. Utah March 22, 2021) ................................................................. 14

*Leverington v. City of Colo. Springs*,
    643 F.3d 719 (10th Cir. 2011) ................................................................................. 3, 4
*Lyng v. Northwest Indian Cemetery Protective Ass'n*,
    485 U.S. 439 (1988) ......................................................................................................6
*Mayberry*,
    2008 WL 5070703 (N.D. Okla. Nov. 21, 2008) ................................................... 9, 10
*Osterkamp v. Salt Lake City*,
    2020 WL 5298866 (D. Utah September 4, 2021) ..................................................... 14
*Parents for Privacy v. Barr*,
    949 F.3d 1210 (9th Cir. 2020) ................................................................... 7, 8, 10, 11
*Parker v. Hurley*,
    514 F.3d 87 (1st Cir. 2008) ............................................................................... 5, 6, 7
*Pierce v. Soc'y of Sisters*,
    268 U.S. 510 (1925) ................................................................................................. 10
*Ross v. Pittinger*,
    2006 WL 475269 (N.D. Okla. Feb. 27, 2007) .............................................................9
*Shively v. Utah Valley Univ.*,
    2020 WL 4192290 (D. Utah July 21, 2020) ............................................................. 14
*Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist.*,
    135 F.3d 694, (10th Cir. 1998) ....................................................................... 9, 10, 12
*Taylor v. Roswell Indep. Sch. Dist.*,
    713 F.3d 25 (10th Cir. 2013) ......................................................................................5
*Troxell v. Granville*,
    530 U.S. 57 (2000) ......................................................................................................9

**Statutes**

Utah Code § 63G-7-101 (2)(b) ........................................................................................ 12
Utah Code § 63G-7-301(2)(i) .......................................................................................... 13
Utah Code § 63G-7-101(3) ............................................................................................. 12

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1, 3, 4

**Other Authorities**

DUCiv R 7-1 ......................................................................................................................1

**RELIEF SOUGHT AND GROUNDS FOR MOTION**

Plaintiffs request declaratory and injunctive relief based on three underlying legal claims arising from Skyridge High School's ("Skyridge") alleged failure to follow state statutory and school policy regarding attendance during the last week of school—two alleged violations of constitutional rights and a state law negligence claim. Plaintiffs' factual allegations do not establish an infringement of the constitutional rights at issue. The Free Exercise Clause of the First Amendment is not implicated by Skyline's application of a facially neutral and generally applicable attendance policy. Moreover, John and Jane Doe have no substantive due process right to attendance enforcement policies and practices that promote the Doe families' religious beliefs. Plaintiffs' negligence claim is premised on an allegation of conduct causing severe emotional distress. The Governmental Immunity Act of Utah (the "GIA") immunizes Defendants against such a claim. Having failed to allege facts establishing any violation of a constitutionally protected right or a legally cognizable negligence claim, Plaintiffs are entitled to no relief. The Complaint should be dismissed.

**FACTUAL BACKGROUND**

The following allegations are taken from Plaintiffs' Complaint.[1] Plaintiffs John and Jane Doe are the parents of Plaintiff J.D., who is student at Skyridge.[2] Plaintiffs are members of the Church of Jesus Christ of Latter-day Saints (the "Church").[3] John and Jane Doe have raised J.D. under the Church's doctrines, which includes a prohibition on

---

[1] ECF 2-3.
[2] *Id.* ¶¶ 12-13.
[3] *Id.* ¶ 39.

pre-marital sex.[4] Prior to the time the events at issue in this suit occurred, John and Jane Doe discovered that J.D. had begun having sex with his girlfriend.[5] John and Jane Doe placed restrictions on J.D.'s activities to mitigate the risk of continued sexual activity.[6] The restrictions included a requirement that J.D. be accompanied by others while spending time with his girlfriend, prohibiting J.D. from having his girlfriend at the Does' residence unless others were present, monitoring J.D.'s phone and requiring J.D. to travel to and from school with his older sibling.[7]

During the last week of school, on May 25, 2022, Jane Doe attempted to check J.D. out of school.[8] Skyridge's front office staff advised Jane Doe that students were not in their classrooms because it was the last week of school.[9] J.D. did not respond to an announcement requesting that he come to the front office, and no school staff was able to locate J.D.[10] Jane Doe walked through the school's hallways looking for J.D. but was unable to find him.[11] While looking for J.D., Jane Doe observed many students loitering in several areas of the school without any supervision and also observed students engaging in public displays of affection.[12] Jane Doe finally located J.D. by contacting his girlfriend.[13] Jane Doe found J.D. hanging out in the school parking lot.[14] John and Jane

---

[4] *Id.*
[5] *Id.* ¶ 38.
[6] *Id.* ¶ 41.
[7] *Id.*
[8] *Id.* ¶¶ 14-15.
[9] *Id.* ¶ 15.
[10] *Id.* ¶¶ 16, 20.
[11] *Id.* ¶ 17.
[12] *Id.* ¶ 18.
[13] *Id.* ¶ 19.
[14] *Id.* ¶ 36.

Doe later learned that J.D. and his girlfriend had sex in the school parking lot three different days during the last week of school, including on May 25.[15]

The Does discussed their concerns about students not being supervised during the last week of school with officials of both Skyridge and Alpine School District ("Alpine").[16]  A Skyridge official reported that during the last week of school each class period is only 15 minutes long and that students attend all classroom periods within a two-hour period.[17]  Otherwise, the last week of school is essentially free time where students can check-in with and obtain help from teachers to improve grades.[18]  Students who do not need or want extra assistance can do whatever they want and are left unsupervised to roam the halls.[19]  An Alpine official acknowledged the Does' concerns and agreed the school district could be better in terms of communicating the unofficial school schedule during the last week of school and pushing schools to follow Alpine's official schedule.[20]

## LEGAL STANDARD

Defendants move for dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  In reviewing a 12(b)(6) motion to dismiss, a court assumes the truth of well-pleaded facts and draws reasonable inferences in a light most favorable to the plaintiff. *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011).  But a claim

---

[15] *Id.* ¶ 42.
[16] *Id.* ¶¶ 24, 28, 35.
[17] *Id.* ¶ 30.
[18] *Id.* ¶ 30.
[19] *Id.*
[20] *Id.* ¶ 44.

survives only if "there is plausibility in the complaint." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Threadbare recitals of elements, facts "merely consistent" with liability, "labels and conclusions," or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient. *Iqbal*, 556 U.S. at 678; *Leverington*, 643 F.3d at 723 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Gee v. Pacheco*, 627 F.3d 1178, 1184-85 (10th Cir. 2010) (citations and quotations omitted); *Hall*, 584 F.3d at 863 (citations and quotations omitted).

In determining the adequacy of a complaint, the Court should begin by identifying allegations that, because they "are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Next, after excluding conclusory assertions, the court then assumes the veracity of well-pleaded allegations and determines whether they plausibly give rise to an entitlement to relief. *Id.* Fed. R. Civ. P. 12(b)(6) does not allow a plaintiff to file a complaint devoid of supporting facts as a vehicle to commence discovery on the off chance some facts might exist which could support a plausible claim. *Twombly*, 550 U.S. at 555, 562-63.

**ARGUMENT**

1. <u>Defendants Did Not Violate Plaintiffs' Rights Under Either the First or Fourteenth Amendments</u>

Plaintiffs allege Skyridge's enforcement of the attendance policy during the last week of school violated two constitutionally protected rights—J.D's free exercise of religion under the First Amendment and John and Jane Doe's Fourteenth Amendment substantive due process right to make decisions regarding the care, custody and control of J.D. Accepting Plaintiffs' factual allegations as being true, there is no violation of either constitutional right.

    1.1    <u>The Free Exercise Clause of the First Amendment Is Not Implicated</u>

"The Free Exercise Clause, importantly, is not a general protection of religion or religious belief." *Parker v. Hurley*, 514 F.3d 87, 103 (1st Cir. 2008). "Neutral rules of general applicability ordinarily do not raise free exercise concerns even if they incidentally burden a particular religious practice or belief. When it comes to the enforcement of such rules, the Free Exercise Clause offers no protection." *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1294 (10th Cir. 2004) (quotations and citations omitted). "A rule is neutral 'so long as its object is something other than the infringement or restriction of religious practices.'" *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 52 (10th Cir. 2013) (quoting *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1233 (10th Cir. 2009)). To state a claim for relief under the Free Exercise Clause, a plaintiff must do more than allege the defendant's acts or omissions offended the plaintiff's religious beliefs. *Bauchman v. West High Sch.*, 132 F.3d 542, 557 (10th Cir. 1997). A plaintiff "must allege facts demonstrating the challenged action created a burden on the

5

exercise of [his] religion." *Id.*; *see also Anspach v. City of Philadelphia, Dept. of Pub. Health*, 503 F.3d 256, (3rd Cir. 2007) ("However, the First Amendment is only implicated if the governmental burden on religion is 'substantial.'") (Quoting *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989)).

A challenged action burdens the free exercise of religion if it "is coercive or compulsory in nature." *Bauchman*, 132 F.3d at 557 (citing *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 448-51 (1988)) (affirming dismissal of Free Exercise Clause challenge to choir participation that included Christian music). "The Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government." *Bauchman*, 132 F.3d at 558 (quoting *Lyng*, 485 U.S. at 451). The Supreme Court has never interpreted the First Amendment to require the government "to behave in ways that the individual believes will further his or her spiritual development or that of his or her family." *Bowen v. Roy*, 476 U.S. 693, 699 (1986). "The Free Exercise Clause simply cannot be understood to require [a school] to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens." *Id.*; *see also Bauchman*, 132 F.3d at 557 (recognizing that the Free Exercise Clause "does not convene on an individual the right to dictate a school's curricula to conform to her religion"). Moreover, "the Constitution does not impose an affirmative obligation on Defendants to ensure that children abide by their parents' wishes, values or religious beliefs." *Anspach,* 503 F.3d at 273 (affirming dismissal of constitutional challenge to city's provision of

6

emergency contraception to minor without notifying parents or encouraging minor to consult with parents).

Courts have addressed challenges brought under the Free Exercise Clause arising from various actions taken by schools that certain students and parents found religiously objectionable. The First Circuit addressed a Free Exercise Challenge to an elementary school's use of teaching materials that promoted tolerance for same-sex relationships and families of same-sex partners. *Parker v. Hurley*, 514 F.3d 87, 90 (1st Cir. 2008). The parents of three students asserted both their own and their students' free exercise of religion right in demanding prior notice that such materials would be used and an exemption from exposure to the instruction, which the plaintiffs found "religiously repugnant." *Id.* The trial court dismissed the plaintiff's claim, and the First Circuit affirmed that decision on appeal. *Id.* at 107. In addressing the students' free exercise right, the court first recognized that "schools are not obligated to shield individual students from ideas which potentially are religiously offensive, particularly when the school imposes no requirement that the student agree with or affirm those ideas, or even participate in discussions about them." *Id.* at 106. Finding no plausible claim of religious indoctrination, the court's decision was driven by a conclusion that requiring a student read a particular book is not coercive of free exercise rights. *Id.* While recognizing that the school's choice of books may be deeply offensive to the plaintiffs' sincerely held religious beliefs, the court found no infringement of the First Amendment free exercise right. *Id.* at 107.

In another case, the Ninth Circuit affirmed dismissal of a case arising from a school's policy allowing transgender students to use restrooms, locker rooms and showers that matched their gender identity. *Parents for Privacy v. Barr*, 949 F.3d 1210, 1217, 1239-40 (9th Cir. 2020). Parents, students and an advocacy group challenged that policy on numerous grounds, including a claim that it violated the Free Exercise Clause. *Id.* at 1233. The plaintiffs specifically claimed the policy violated their free exercise right by forcing students to be exposed to bathroom and locker room environments that conflict and prevent compliance with the plaintiffs' religious beliefs. *Id.* at 1234.

The trial court dismissed the plaintiffs' free exercise claim on the basis that the school policy at issue was facially neutral and generally applicable with respect to religion and therefore did not violate the First Amendment. *Id.* On appeal, the plaintiffs argued that the trial court should have applied strict scrutiny. *Id.* In rejecting that argument, the Ninth Circuit noted the absence of any plausible allegation in the complaint that the policy was adopted "with the object of suppressing the exercise of religion." *Id.* at 1235. "Moreover, the [policy] makes no reference to any religious practice, conduct, belief, or motivation." *Id.* (quotations and citation omitted). Finally, the court concluded, the policy was generally applicable and did not require only religious students to share the school's facilities with transgender students. *Id.* at 1236. In conducting a rational basis review, the Ninth Circuit upheld the constitutionality of the policy after concluding that it was rationally related to the legitimate purpose of protecting student safety. *Id.*

The challenged school action here does not implicate J.D.'s free exercise rights. First, the Complaint is devoid of any factual allegations that would result in a strict scrutiny review by the Court. Skyridge's attendance policy and practices are facially neutral, generally applicable and rationally related to the legitimate purpose of giving students an opportunity to work with their teachers to improve grades at the end of the school year.[21] Second, while Plaintiffs contend Skyridge's lax enforcement of attendance during the last week of school opened a window of opportunity for J.D. to make a personal choice that violates his family's religious beliefs, the Free Exercise Clause provides no right to enforcement of policies that facilitate a family's preferred religious practices at school. *See Bowen,* 476 U.S. at 699; *Anspach,* 503 F.3d at 273. Rather, the Free Exercise Clause prohibits coercive or compulsory burdens placed on the exercise of religious beliefs. *Bauchman,* 132 F.3d at 557. Skyridge did not coerce J.D. to have sex with his girlfriend. He made that choice on his own. Plaintiffs' free exercise claim should be dismissed because Skyridge's actions imposed no burden on J.D.'s religious beliefs, let alone a substantial burden, which is required to implicate protection under the Free Exercise Clause.

    1.2    <u>John and Jane Doe Do Not Have a Substantive Due Process Right to Have Their Son Shielded from Making Personal Choices that Do Not Comport with His Family's Religious Beliefs</u>

The Due Process Clause of the Fourteenth Amendment "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxell v. Granville,* 530 U.S. 57, 66 (2000). This right, sometimes referred to

---

[21] Compl. ¶ 30.

as the *Meyer-Pierce* right, "is focused on the principle that the state does not have the right to interfere with parents' choice of 'a specific educational program—whether it be religious instruction at a private school or instruction in a foreign language.'" *Ross v. Pittinger*, No. 06CV0018CVESAJ, 2006 WL 475269, at *2 (N.D. Okla. Feb. 27, 2007) (quoting *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1205 (9th Cir. 2005)). "However, as with all constitutional rights, the right of a parent to control the upbringing of their children is not without limitation." *Id.* at *1 (finding no right to control whether a student practices with junior varsity or varsity team); *see also Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, (10th Cir. 1998) (recognizing that constitutional right is limited in scope and citing cases in support of that proposition); *Mayberry Indep. Sch. Dist. No. 1 of Tulsa Cnty., Okla.*, No. 08-CV-416-GKF-PJC, 2008 WL 5070703, at *4 (N.D. Okla. Nov. 21, 2008) ("'Numerous cases, however, have made it clear that this constitutional right is limited in scope.'") (Quoting *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925)). "The case law in this area establishes that parents simply do not have a constitutional right to control each and every aspect of their children's education and oust the state's authority over that subject." *Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, (10th Cir. 1998) (finding parents do not have a right to send children to school part time and to pick and choose which courses their children will take from the public school).

It is well established that parents do not have a due process right to direct a school's curriculum to prevent a student's exposure to materials parents find objectionable. *See, e.g.*, *Swanson*, 135 F.3d at 699 (citing other cases); *Fields*, 427 F.3d

10

at 1206 (concluding that Due Process Clause "does not afford parents a right to compel public schools to follow their own idiosyncratic views as to what information the schools may dispense"); *Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525, 533-34 (1st Cir. 1995) (upholding compulsory high school sex education program over due-process challenge). Likewise, parents do not have a due process right to interfere with a school's operations generally. *See Mayberry Indep. Sch. Dist. No. 1 of Tulsa Cnty., Okla.*, No. 08-CV-416, 2008 WL 5070703, at *5 (N.D. Okla. Nov. 21, 2008) (dismissing substantive due process challenge to school's decision to ban parent from school property for five weeks); *Gunter v. North Wasco Cnty. Sch. Dist. Bd. of Educ.*, 577 F. Supp. 3d 1141, (D. Or. 2021) (dismissing substantive due process challenge to school board's Covid-19 mask mandate).

      The Due Process Clause does not compel Defendants to shield J.D. from voluntary participation in personal activities that are at odds with his family's religious beliefs. This principle of law is illustrated by two cases. In the *Parents for Privacy* case discussed above, the plaintiffs also asserted that the school's policy allowing transgender students to use school facilities matching their gender identity violated the plaintiff parents' substantive due process right to make decisions regarding the care, custody, and control of their children. 949 F.3d at 1220. On appeal of the dismissal of that claim, the plaintiffs argued that the Due Process Clause encompassed parents' right to determine whether their children would have to risk being exposed to opposite sex nudity at school, which conflicted with the parents' sincerely held religious beliefs. *Id.* at 1230. Both the district court and the Ninth Circuit disagreed with the plaintiffs as to the scope of

11

parents' substantive due process rights. *Id.* at 1230-32. On appeal, the Ninth Circuit first recognized legal precedent establishing that parents "not only lack a constitutional right to direct the curriculum that is taught to their children, but that they also lack constitutionally protected rights to direct school administration more generally." *Id.* at 1231. The court then noted the plaintiffs' failure to cite any legal authority supporting their interpretation of the Due Process Clause. *Id.* at 1232-33. The Ninth Circuit affirmed dismissal of the substantive due process claim after concluding that parents' right to control the upbringing of their children "does not extend as far as [p]laintiffs hypothesize." *Id.* at 1233.

Similarly, a magistrate judge in the District of Colorado rejected a substantive due process challenge to elementary school instruction that promoted tolerance and understanding of transgendered individuals. *Jones v. Boulder Valley Sch. Dist.* Re-2, No. 20-cv-03399, 2021 WL 5264188, at *22 (D. Colo. Oct. 4, 2021). The plaintiffs, parents of three students, objected to the instruction based on their religious beliefs but could cite no case law standing for the proposition that the Due Process Clause gave the parents a right to demand that their children be exempted from exposure to the instruction at issue. *Id.* at *15. In rejecting the plaintiff's substantive due process claim, the court relied in part on the Tenth Circuit's ruling in *Swanson* that parents' substantive due process right is limited in scope and summarized the law as follows: "The bottom line is that 'public schools are not obligated to shield individual students from ideas which are potentially religiously offensive, particularly when the school imposes no requirement that the student agree with or affirm those ideas, or even participate in

12

discussions about them.'" *Id.* at *16 (quoting *Bauchman v. West High Sch.*, 132 F.3d 542, 558 (10th Cir. 1997)).

John and Jane Doe's substantive due process rights do not extend to enforcement of school policy and practices that facilitate compliance with their religious beliefs. Even if, as alleged by Plaintiffs, Skyridge's lax enforcement of attendance policy created an opportunity for J.D. to engage in personal behavior that his parents find religiously objectionable, the constitution does not obligate Defendants to take steps to reduce the risk of such behavior from occurring. The facts alleged in the Complaint do not establish a violation of John and Jane Does' parental rights under the Fourteenth Amendment.

2.      Plaintiffs' Negligence Claim is Barred by the GIA

The GIA "governs all claims against governmental entities or against their employees or agents arising out of the performance of the employee's duties, within the scope of employment, or under color of authority." Utah Code § 63G-7-101 (2)(b). Under the GIA, "[a] governmental entity and an employee of a governmental entity retain immunity from suit unless that immunity has been expressly waived." § 63G-7-101(3); *see also Cunningham v. Weber Cnty.*, 506 P.3d 575, 581 (Utah 2022) ("The GIA codifies the broad immunity that a sovereign traditionally enjoys from legal action…."); *Asset Acceptance LLC v. Utah State Treasurer*, 367 P.3d 1019, 1021 (Utah Ct. App. 2016) ("Utah case law has long recognized that sovereign immunity generally prohibits actions against the State unless it has expressly waived its immunity."). The GIA generally waives immunity "as to any injury proximately caused by a negligent act or omission of an employee committed with the scope of employment." Utah Code § 63G-7-301(2)(i).

This waiver, however, is subject to § 63G-7-201(4) which retains immunity "if the injury arises out of or in connection with, or results from: , . . . assault, battery, false imprisonment, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, *infliction of mental anguish*, or violation of civil rights." (Emphasis added).

Courts have consistently held that the retention of immunity for claims arising out of or in connection with infliction of mental anguish applies whether the to both negligent and intentional acts.  See e.g. *Atiya v. Salt Lake City,* 852 P.2d 1007, 1011 n.6 (Utah Ct. App. 1993) (affirming dismissal of intentional infliction of emotional distress and noting that "even if [the plaintiff] had alleged her injuries arose from a negligent act of the County or its employee, the [GIA] would not provide relief in this case because of the explicit exception to the waiver provided for . . . injuries arising out of the 'infliction of mental anguish.'"); *Jensen v. Gale,* No. 1:13-CV-00030, 2014 WL 7246948, at *13-14 (D. Utah Dec. 18, 2014) (injuries arising from both intentional and negligent infliction of mental anguish fall within the GIA).  Further, courts that have considered the retention of immunity for infliction of mental anguish provision have concluded that this provision bars claims for negligent infliction of emotional distress.  See *Atiya,* 852 P.2d at 1011 n.6 (retention of immunity for injuries arising out of "infliction of mental anguish" applies to claim for negligent infliction of emotional distress); *Keller v. Alpine Sch. Dist*., 2:19-CV-874, 2021 WL 1087383, at *10-11 (D. Utah March 22, 2021) (negligence claims for "injuries, damages, and losses, including but not limited to: emotional distress, fear, anxiety and trauma [ ] fall within" the GIA); *Osterkamp v. Salt Lake City,* 2:20-CV-32,

2020 WL 5298866, at *6 (D. Utah September 4, 2021) ("The County is also immune from [the plaintiff's] claim of negligent infliction of emotional distress under the plain language of subsection 63G-7-201(4)(b)."); *Shively v. Utah Valley Univ.*, No. 2:20-CV-119, 2020 WL 4192290, at *4 (D. Utah July 21, 2020) ("The plain meaning of 'mental anguish' and its interchangeable use with 'emotional distress' demonstrate that a claim for negligent infliction of emotional distress against a public entity or employee is barred by the GIA.").

Plaintiffs' complaint is clear as to the injuries JD has experienced as a result of Defendants' allegedly negligent conduct. Specifically, Plaintiffs complain "JD has undergone *severe emotional distress* because of the Defendants' actions and omissions."[22] Plaintiffs' complaint is vague as to JD's parents' injuries[23] but it is clear there are emotional in nature and that Plaintiffs collectively have sought counseling "to treat and remedy" their injuries.[24] These claims for injury thus arise out of or in connection with the infliction of mental anguish. The GIA immunizes Defendants against these claims.[25]

## CONCLUSION

Plaintiffs' allegations against Defendants do not implicate rights protected under either the Free Exercise Clause of the First Amendment or the Due Process Clause of the Fourteenth Amendment. Additionally, the GIA immunizes Defendants against Plaintiffs'

---

[22] Compl. ¶ 94 (emphasis added).
[23] *Id.* ¶¶ 95-97.
[24] *Id.* ¶ 98.
[25] Absent plausible allegations establishing a violation of a constitutional right or a cognizable negligence claim, there is no basis for the declaratory and injunctive relief requested in the Complaint.

negligence claim.  For these reasons, the Court should dismiss Plaintiffs' action against Defendants.

RESPECTFULLY SUBMITTED THIS 31st day of October, 2022.

OFFICE OF THE UTAH ATTORNEY GENERAL


*/s/ Bradley R. Blackham*
DARIN B. GOFF
BRADLEY R. BLACKHAM
Assistant Utah Attorneys General
*Attorneys for Defendants*