DARIN B. GOFF (11355)
BRADLEY R. BLACKHAM (8703)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorneys General
160 East 300 South, 6th Floor
PO Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dgoff@agutah.gov
bblackham@agutah.gov

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOHN and JANE DOE, personally and on behalf of their minor child JD,<br><br>Plaintiffs,<br><br>v.<br><br>ALPINE SCHOOL DISTRICT, SHANE FARNSWORTH, an individual, JEFF SCHOONOVER, an individual, JOHN WALL WORK, an individual, and JOSEPH ATWOOD, and individual, and DOES I-V,<br><br>Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>Case No. 2:22-CV-00632<br><br>Judge Jill N. Parrish |

Defendants submit this Reply in support of their Motion to Dismiss Complaint.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................. 1

ARGUMENT .................................................................................................... 1

    1.    Plaintiff Has Not Asserted a Constitutionally Protected Right ............ 1

        1.1    The Fourteenth Amendment Does Not Require Defendants to Adopt and Enforce Plaintiffs' Preferred School Policies ........... 1

        1.2    A School's Custodial Authority Over Students Does Not Give Rise to A Due Process Right to Have That Authority Exercised in Conformance with a Parent's Preferences ............................ 5

        1.3    Plaintiffs Do Not Have a Right Under the Free Exercise Clause to School Policies that Facilitate and Do Not Burden Conduct Undertaken by J.D.'s Parents at Home to Ensure Compliance with Religious Beliefs ............................................................... 7

        1.4    The Hybrid-Rights Doctrine Has No Application ..................... 9

    2.    Plaintiffs' Negligence Claim is Barred by the GIA ............................. 11

CONCLUSION ............................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

Cases

*303 Creative LLC v. Elenis,*
  6 F.4th 1160 (10th Cir. 2021) .............................................................................. 10
*Axson-Flynn v. Johnson,*
  356 F.3d 1277 (10th Cir. 2004) .............................................................................. 10
*C.N. v. Ridgewood Bd. of Educ.,*
  430 F.3d 159 (3d Cir. 2005) ................................................................................. 3, 4
*Castaldo v. Stone,*
  192 F. Supp. 2d 1124, (D. Colo. 2001) ..................................................................... 6
*Doe v. Franklin Square Union Free Sch. Dist.,*
  568 F. Supp. 3d 270 (E.D.N.Y. 2021) ...................................................................... 3
*Fields v. Palmdale Sch. Dist.,*
  447 F.3d 1187 (9th Cir. 2006) .................................................................................. 4
*Grace United Methodist Church v. City of Cheyenne,*
  451 F.3d 643 (10th Cir. 2006) .............................................................................. 7, 9
*Gunter v. North Wasco Cnty. Sch. Dist. Bd. of Educ.,*
  577 F. Supp. 3d 1141 (D. Or. 2021) ........................................................................ 3
*Jensen v. Gale,*
  2014 WL 7246948 (D. Utah Dec. 18, 2014) ........................................................ 13
*Jones v. Boulder Valley School District RE-2,*
  2021 WL 5264188 (D. Colo. Oct. 4, 2021) ........................................................ 4, 5
*Legacy Church, Inc. v. Kunkel,*
  455 F. Supp. 3d 1100 (D.N.M. 2020) ................................................................... 10
*Keller v. Alpine Sch. Dist.*
  2020 WL 5298866 (D. Utah September 9, 2020) ............................................... 10
*Keller v. Alpine Sch. Dist*
  2021 WL 1087383 (D. Utah March 2021) ............................................................. 9
*Lyng v. Northwest Indian Cemetery Protective Ass'n,*
  485 U.S. 439 (1988) .............................................................................................. 8, 9
*Parents for Privacy v. Barr,*
  949 F.3d 1210 (9th Cir. 2020) ..................................................................... 2, 3, 4, 8
*Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist.,*
  135 F.3d 694 (10th Cir. 1998) ................................................................................. 1

*Vernonia Sch. Dist. v. Acton*,
   515 U.S. 646 (1995) ......................................................................................... 4
*Wright v. University of Utah*
   876 P.2d 380, 383 (Utah Ct. App. 1994) ....................................................... 11
*Young v. Salt Lake City Sch. Dist.*,
   52 P.3d 1230 (Utah 2002) ............................................................................... 5

**Statutes**

Utah Code Ann. § 63G-7-201(4) ........................................................................ 9
Utah Code § 53G-6-206 ..................................................................................... 2

**INTRODUCTION**

The acts and omissions alleged by Plaintiffs do not establish an infringement under either the Fourteenth or First Amendments. The Constitution does not obligate Defendants to adopt and enforce attendance and supervision policies that Plaintiffs prefer. Moreover, Plaintiffs are not entitled under the Constitution to school policies that facilitate and do not burden personal efforts made by J.D.'s parents at home to ensure J.D.'s compliance with his family's religious beliefs. Plaintiffs' assertion that Defendants failed to appropriately supervise J.D. sounds in tort law and not the Constitution. Plaintiffs' negligence claim is barred by the Governmental Immunity Act of Utah ("GIA"). For these reasons, the Court should dismiss the Complaint.

**ARGUMENT**

1. <u>Plaintiff Has Not Asserted a Constitutionally Protected Right</u>

    1.1 <u>The Fourteenth Amendment Does Not Require Defendants to Adopt and Enforce Plaintiffs' Preferred School Policies</u>

It is well established in the law that parental rights of custody, care and supervision under the Fourteenth Amendment are limited in scope, particularly in a school setting. *See Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, 699 (10th Cir. 1998). In their response, Plaintiffs fail to acknowledge this limitation, let alone cite persuasive legal authority supporting their position that

parents have a substantive due process right to enforcement of their preferred student attendance and supervision policies.[1] Instead, Plaintiffs cite a litany of cases standing for the general proposition that parents have certain rights to make decisions regarding the care, custody and control of their children. Those cases are not helpful in resolving the issue before the Court.

Plaintiffs mostly fail to address legal authority cited by Defendants in their motion establishing that parents do not have a due process right to interfere with or dictate school operations.[2] A handful of cases addressing the constitutionality of school policies were cited in discussed in Defendants' motion.[3] While none of those cases specifically address a school's attendance and supervision policies and practices, they solidly stand for the proposition the Fourteenth Amendment does not compel schools to adopt and enforce parents' preferred school policies.[4] *See,*

---

[1] Plaintiffs contend the fundamental right they assert is not school action shielding J.D. from making personal choices that conflict with his family's religious beliefs but rather enforcement of attendance policies. Regardless of how the alleged right is framed by Plaintiffs, they fail to cite any legal authority establishing that such a right is protected by the Constitution.
[2] ECF 15 at p. 11.
[3] *Id.* at pp. 11-13.
[4] Plaintiffs assert that the student supervision policies are not just personal preferences but rather statutory requirements that are incorporated into school district policy. *See* Compl. ¶¶ 56-57 (ECF 2-3). This is inaccurate. Utah's compulsory education statutes establishes certain school district duties. Utah Code § 53G-6-206. Those duties do not impose specific supervision requirements on school districts. Moreover, that statute

*e.g., Parents for Privacy v. Barr*, 949 F.3d 1210, 1233 (9th Cir. 2020) (dismissing substantive due process challenge to school policy allowing transgender students to use school facilities matching the students' gender identity); *Gunter v. North Wasco Cnty. Sch. Dist. Bd. of Educ.*, 577 F. Supp. 3d 1141, 1157 (D. Or. 2021) (dismissing substantive due process challenge to school board's Covid-19 mask policy). Indeed, the court in *Gunter* recognized that "'What is true for curricular requirements is just as true for other educational regulations like the Mask Mandate.' Parents do not have the fundamental right to refuse such regulation." *Gunter*, 577 F. Supp. 3d at 1156 (quoting *Doe v. Franklin Square Union Free Sch. Dist.*, 568 F. Supp. 3d 270, 291 (E.D.N.Y. 2021)). Likewise, a case cited by Plaintiffs recognizes that "in certain circumstances the parental right to control the upbringing of a child must give way to a school's ability to control curriculum and the school environment." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 182 (3d Cir. 2005) (affirming summary judgment in favor of the defendant). The specific issue before the court in *C.N.* involved administration of a student survey

---

expressly provides that it does not impose civil liability on school districts. *Id*. § 53G-6-206(4). Similarly, the Alpine School District Attendance Policy merely provides that students are expected to be in attendance "every possible day of the school year" but does not mandate specific supervision requirements. Alpine Sch. Dist. Policy No. 5156 (https://www.alpineschools.org/policy/, last visited Dec. 15, 2022).

that included questions about drug and alcohol use, sexual activity and suicide attempts among other topics. *Id.* at 161. The court noted that the survey was not "neatly tied to considerations of curriculum or educational environment." *C.N.*, 430 F.3d at 183. Nevertheless, the court found that the survey did not infringe on parents' substantive due process rights. *Id.* at 185. Here, the issue of supervision of students during the school day is directly tied to the school environment and therefore falls outside the scope of parental due process rights.

Plaintiffs' effort to distinguish two cases cited in Defendants' is unpersuasive. In *Parents for Privacy*, the Ninth Circuit did not in fact rely on the notion that parental rights do not extend beyond the schoolhouse door. Prior to deciding that case, the Ninth Circuit amended a prior opinion to delete that phrase, which did not change the holding of that prior case. *See Fields v. Palmdale Sch. Dist.*, 447 F.3d 1187, 1190-91 (9th Cir. 2006). That deletion was expressly pointed out in the *Parents for Privacy* opinion, and the Ninth Circuit made it clear that the deleted phrase did not affect the application of the *Fields* opinion to the *Privacy for Parents* decision. *Privacy for Parents*, 949 F.3d at 1229 n. 15. While Plaintiffs attempt to distinguish a second case cited by Defendants on the basis that Plaintiffs' objection is a failure to follow statutory law and district policy as opposed to exposure to offensive ideas, the common denominator in both *Jones*

4

and this case is parental objection to school policy and practice. See *Jones v. Boulder Valley School District RE-2,* No. 20-cv-03399, 2021 WL 5264188 (D. Colo. Oct. 4, 2021) (noting that the parents in that case argued the school and district "have a policy of surreptitiously sneaking pro-transgender and pro-LGBTQ programming into class discussions" in violation of the parents' substantive due process rights). The cases cited in Defendants' motion stand unrebutted and support the conclusion that Plaintiffs do not have a substantive due process right when it comes to Defendants' student supervision policies and practices.

### 1.2 A School's Custodial Authority Over Students Does Not Give Rise to A Due Process Right to Have That Authority Exercised in Conformance with a Parent's Preferences

Having failed to establish the existence of a recognized parental due process right to specific student attendance and supervision policies, Plaintiffs attempt to conflate their negligence claim with a constitutionally protected due process right. This effort is also unpersuasive. When parents place their children in school, they delegate a portion of their parental authority to the school. *Vernonia Sch. Dist. v. Acton*, 515 U.S. 646, 654 (1995). By virtue of this delegation of authority, the school stand *in loco parentis* over students. *Id.* Plaintiffs cite no legal authority standing for the proposition that parents who delegate their authority have a substantive due process right to have that

authority exercised in conformance with the parents' personal preferences. Instead, Plaintiffs cite a state law case for the proposition that school districts owe a "custodial duty of protection" to students over which the school district stands *in loco parentis*. *Young v. Salt Lake City Sch. Dist.*, 52 P.3d 1230, 1233 (Utah 2002). This duty of protection is a common-law duty that sounds in tort law and not a constitutional right recognized under Due Process Clause. *Id.* (addressing duty within context of a negligence claim asserted against school district). Additionally, the duty is owed to the student and, unlike the substantive due process right asserted here, does not independently rest in the student's parents. *Id.* at 1232 (noting that the minor student, acting through his mother, sued the school district for personal injuries sustained by the student when he was hit by a car while riding a bike). Plaintiffs have asserted a separate cause of action for negligence against Defendants. The alleged duty to J.D. that underlies that claim is distinct from the substantive due process right asserted by J.D.'s parents. *See Castaldo v. Stone*, 192 F. Supp. 2d 1124, (D. Colo. 2001) ("While implemented to provide a means of redress for the deprivation of life, liberty or property by state action, neither § 1983 nor the Fourteenth Amendment transform mere torts into constitutional violations."). Plaintiffs' reliance on *in loco parentis* is misplaced as it relates to the parental due process claim.

1.3 Plaintiffs Do Not Have a Right Under the Free Exercise Clause to School Policies that Facilitate and Do Not Burden Conduct Undertaken by J.D.'s Parents at Home to Ensure Compliance with Religious Beliefs

The Free Exercise Clause cannot be contorted into a hammer requiring Defendants to affirmatively act to close off windows of opportunity for J.D. to act in ways that his parents do not approve. Despite Plaintiffs' efforts to recast the religious belief at issue as one of supervision, the Complaint clearly establishes the belief as a prohibition on premarital sex.[5] Supervision at home is conduct J.D.'s parents have undertaken in an effort to ensure that J.D. complies with that religious belief. "While the First Amendment provides absolute protection to religious thoughts and beliefs, the free exercise clause does not prohibit Congress and local governments from validly regulating religious conduct." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649 (10th Cir. 2006). "Neutral rules of general applicability normally do not raise free exercise concerns even if they incidentally burden a particular religious practice or belief." *Id.* "Thus, a law that is both neutral and generally applicable need only be rationally related to a legitimate governmental interest to survive a constitutional

---

[5] Compl. ¶¶ 39, 53.

challenge." *Id.* "A law is neutral so long as its object is something other than the infringement or restriction of religious practices." *Id.* A law without exemptions is generally applicable. *Id.* at 650.

Government action coercing violation of religious beliefs is prohibited, but this "does not and cannot imply that incidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs, require government to bring forward a compelling justification." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988). In *Lyng*, members of three American Indian tribes sued to stop the U.S. Forest Service from permitting timber harvesting and road construction in an area that is considered sacred and used for religious purposes by the tribes. *Id.* at 441. The Supreme Court readily acknowledged that the proposed government action would have "severe adverse effects on the practice of [plaintiffs'] sincerely held religious beliefs. *Id.* at 448. Nevertheless, the Court found no violation of the Free Exercise Clause because the plaintiffs would not be coerced by the government's action into violating their religious beliefs. *Id.* at 449. The Court recognized that "[w]hatever may be the exact line between unconstitutional prohibitions on the free exercise of religion and legitimate conduct by government of its own affairs,

8

the location of the line cannot depend on measuring the effects of a government action on a religious objector's spiritual development." *Id.* at 451.

Here, Plaintiffs would have the Court draw the line of unconstitutional conduct precisely where the United States Supreme Court has said it cannot be drawn. Plaintiffs do not dispute that the attendance and supervision policy at issue is religiously neutral and generally applicable to all students of the school. While J.D.'s parents might understandably be frustrated that the school's actions unwittingly made it more difficult for them to facilitate J.D.'s compliance with the Doe family's religious beliefs, that burden was incidental, especially when compared with the burden imposed in *Lyng*. The school's policies and practices did not coerce J.D. into acting contrary his family's religious beliefs. He repeatedly made a voluntary choice to do so. He just as easily could have made other choices. Plaintiffs' Complaint does not state a violation of the Free Exercise Clause.

### 1.4 The Hybrid-Rights Doctrine Has No Application

A number of courts, including the Tenth Circuit, have acknowledged that the hybrid-rights doctrine is "controversial" and may be "mere *dicta* not binding on lower courts." *Grace United Methodist Church,* 451 F.3d at 656. Additionally, courts "are also divided on the strength of the independent constitutional right

claim that is required to assert a cognizable hybrid- rights claim." *Id.* The Tenth Circuit applies the doctrine only in situations where the plaintiff "establishes a 'fair probability, or a likelihood,' of success on the companion claim." *Id.* (quoting *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1295 (10th Cir. 2004)). Only in that context does the Tenth Circuit apply heightened scrutiny to the alleged constitutional violations. *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1188 (10th Cir. 2021). In *Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020), the Ninth Circuit expressed doubt as to whether the doctrine is recognized in that circuit but did not find it necessary to resolve the question after concluding that the doctrine has no application where the plaintiff alleges "multiple failing constitutional claims that do not have a likelihood of success on the merits." *Id.* at 1237 (affirming dismissal of free exercise and substantive due process claims); *see also Legacy Church, Inc. v. Kunkel*, 455 F. Supp. 3d 1100, 1158 n.13 (D.N.M. 2020) (reviewing and agreeing with criticism of the hybrid-rights doctrine and noting "Legacy Church's Free Exercise and Assembly rights, working together, do not compel a different result than either produces independently").

Here, both of Plaintiffs' constitutional claims fail as a matter of law. As discussed above and in Defendants' motion, no constitutional right has been infringed upon by the conduct alleged. Just as the courts in both *Parents for*

*Privacy* and *Kunkel* recognized, combining two failed constitutional claims does not trigger application of the hybrid-rights doctrine. Accordingly, Plaintiffs' invocation of the hybrid-rights doctrine provides no protection against Defendants' motion.

2. Plaintiffs' Negligence Claim is Barred by the GIA

Defendants seek to dismiss Plaintiffs' negligence claim because the claim "arises out of or in connection with, or results from [ ] "infliction of mental anguish." Utah Code Ann. § 63G-7-201(4). Defendants' motion cited numerous cases where both state and federal courts have concluded that state-law negligence claims for emotional distress damages are barred by the GIA.[6] Indeed, as recently as 2021, the Utah District Court has held that the subsection 201(4) bars suit for "emotional distress, fear, anxiety and trauma." *Keller v. Alpine Sch. Dist.*, 2:19-CV-874, 2021 WL 1087383, at *11 (d. Utah March 2021). Further, Utah Courts have consistently rejected attempts to evade the retention of immunity in subsection 201(4) by "recharacterizing the supposed cause of the injury" as negligence. *See Wright v. University of Utah, 876 P.2d 380, 383 (Utah Ct. App. 1994)* (citing cases). As the Wright court explained, "[T]he focus is on

---

[6] Defs. Mot. to Dismiss p. 14.

the result, not the circumstances leading thereto." *Id.* at 387. In the face of this fulsome precedent, Plaintiffs fail to cite a single case allowing a claim for emotional distress, either negligent or intentional, to overcome the immunity retained in subsection 201(4) for infliction of mental anguish.

Plaintiffs' instead pivot to an argument that their claim encompasses injuries that "are distinct from merely mental anguish."[7] Despite this bold assertion, however, Plaintiffs' response fails to point to any injury they have suffered beyond emotional distress, and nothing in their Complaint suggests otherwise. In fact, the only injuries alleged are "severe emotional distress" for which Plaintiffs collectively sought counseling.[8] Those injuries are the same as the emotional distress, fear, anxiety and psychological trauma for which all applicable precedents counsel immunity is retained under the GIA.

Finally, Plaintiffs attempt to evade the immunity afforded for infliction of mental anguish by arguing they are entitled to compensation for emotional distress because their injuries resulted from a constitutional violation. This argument fails. Plaintiffs' complaint, the operative document which puts

---

[7] Plfs. Resp. in Opp. to Mot. to Dismiss, p. 16.
[8] Compl., ¶¶ 94, 98.

Defendants on notice as to what their claims are, identifies their claim as a negligence claim, speaks to Defendants' duty of care as to J.D., and makes no reference to constitutional injury. Their third cause of action is not a § 1983 claim masquerading as negligence. Further, attempts to overcome the GIA by alleging a violation of constitutional rights are not allowed. *Osterkamp v. Salt Lake County*, 2:20-CV-00032 2020 WL 5298866 at *7 (D. Utah September 9, 2020) (rejecting "argument that the [GIA]'s provisions do not apply because the County violated [plaintiff's] constitutional rights."). Finally, even if their negligence claim articulated a theory that Defendants "negligently" violated their constitutional rights that claim would remain barred by the GIA, not only by 63G-7-201(4)(b)'s mental anguish provision but also by the same subsection's retention of immunity for injuries arising out of, or in connection with, or resulting from "violation of civil rights." Utah has not waived immunity for state-law claims of federal constitutional violations in any form. See *Jensen v. Gale*, No. 1:13-CV-00030, 2014 WL 7246948, at *13 (D. Utah Dec. 18, 2014) (acknowledging "baseline" that "governmental entities are immune from suit for "any" injury—negligent, intentional, or otherwise" absent an express waiver).

## CONCLUSION

Plaintiffs do not assert a cognizable violation of the Constitution, and their negligence claim is barred.  Accordingly, the Court should dismiss Complaint.

RESPECTFULLY SUBMITTED THIS 19th day of December, 2022.

OFFICE OF THE UTAH ATTORNEY GENERAL


*/s/ Bradley R. Blackham*
DARIN B. GOFF
BRADLEY R. BLACKHAM
Assistant Utah Attorneys General
*Attorneys for Defendants*

## **WORD COUNT CERTIFICATION**

I, Bradley R. Blackham, certify that pursuant to DUCivR 7-1(a)(5), this reply memorandum contains 2,941 words, excluding the caption, table of contents, table of authorities and signature block and complies with DUCivR 7-1(4).

*/s/ Bradley R. Blackham*