IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOHN and JANE DOE, personally and on behalf of their minor child JD, <br><br> Plaintiffs, <br><br> v. <br><br> ALPINE SCHOOL DISTRICT, SHANE FARNSWORTH, JEFF SCHOONOVER, JOHN WALL WORK, JOSEPH ATWOOD, and DOES I–V, <br><br> Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS IN PART <br><br><br> Case No. 2:22-cv-00632-JNP-JCB <br><br> District Judge Jill N. Parrish |

Before the court is a motion to dismiss brought by Alpine School District, Shane Farnsworth, Jeff Schoonover, John Wall Work, Joseph Atwood, and Does I–V (collectively, the defendants or Alpine School District). The court GRANTS the motion IN PART. The court dismisses the Fourteenth Amendment and First Amendment claims on the merits but elects not to retain supplemental jurisdiction over the remaining negligence claim. The court does not resolve the motion to dismiss this claim and remands it to state court.

### BACKGROUND[1]

John and Jane Doe are the parents of JD, a minor student who attended Skyridge High School. On May 25, 2022, Mrs. Doe arrived at the school and attempted to check JD out of school;

---

[1] For the purposes of this motion to dismiss, the court accepts as true the factual allegations contained in the operative complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

however, the Skyridge office staff informed her that the students were not in their classrooms because it was the last week of school. The office workers made an announcement and attempted to page JD, but he did not come to the office.

Mrs. Doe searched for JD by walking through the school hallways, where she observed many unsupervised students lingering in the halls. She located her son in the school parking lot after contacting his girlfriend.

The Does spoke with several school officials about the incident. They also sent a letter to the Superintendent, Dr. Farnsworth, and attempted to speak to the Principal, John Wallwork. The Does explained their concerns that May 25 was designated as a normal school day on the district calendar; that according to their children, several teachers encouraged students not to attend classes during the last week of school; that students were left unsupervised during school hours due to Skyridge's staff not taking or enforcing attendance that day; and that no school staff were able to account for JD's whereabouts that day. Skyridge's Resource Officer, Mr. Sweeten, told them that although the district calendar indicated that the last week of school would follow a normal schedule, Skyridge had an informal custom of releasing students after only two hours of class time and of not enforcing attendance during that week. Administrators stated that this unofficial policy was followed so that students could check in with teachers about their grades. Mr. Schoonover acknowledged the Does' concerns and agreed that the school district could do better in communicating the unofficial school schedule and in pushing schools to follow the official schedule.

The Does are members of the Church of Jesus Christ of Latter-day Saints and have raised their son under its doctrines and to follow its practices, one of which prohibits premarital sex. The Does had previously discovered that JD had begun having sex with his girlfriend and had placed

restrictions on JD's activity to prevent him from having premarital sex thereafter, such as requiring him to be accompanied by other persons when he was with his girlfriend and requiring that JD travel to and from school with his older sibling. The Does learned that JD had had sex with his girlfriend in the parking lot next to the school during school hours three times during the final week of school.

The Does sued the school district and several administrators, alleging that their constitutional rights to parent their child and to free exercise of religion had been violated. They also claimed that the defendants were liable for negligence. Defendants moved to dismiss the claims against them, arguing that they did not violate the plaintiffs' constitutional rights and that the negligence claim is barred by the Governmental Immunity Act of Utah.

## ANALYSIS

The defendants argue that the plaintiffs' claims should be dismissed under Rule 12(b)(6), which provides that a court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

The plaintiffs allege that the defendants violated Jane and John Does' Fourteenth Amendment right to parent and First-Amendment right of free exercise of their religion. They also allege that these violations should be subject to strict scrutiny in accordance with the hybrid-rights exception as explained in *Employment Div. v. Smith.* 494 U.S. 872, 881–82 (1990). Finally, Jane

3

and John Doe allege that the defendants' actions were negligent and caused emotional damage to their son and deprived them of their parental and religious rights.

I.      FOURTEENTH-AMENDMENT PARENTAL RIGHTS

The plaintiffs allege that the defendants' actions and omissions deprived the Does of the ability to freely exercise their constitutional right to parent guaranteed by the Fourteenth Amendment. The Fourteenth Amendment protects parents' fundamental right "to make decisions concerning the care, custody, and control of their children," *Troxel v. Granville*, 530 U.S. 57, 66 (2000), including "the constitutional right to direct a child's education," *Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, 700 (10th Cir. 1998). However, this right only exists "up to a point" and does not allow parents to "control each and every aspect of their children's education and oust the state's authority over that subject." *Id.* at 699. Courts have found that parents do not have the right to exempt their child from specific programs that they find objectionable. For example, in *Immediato v. Rye Neck Sch. Dist.*, a student was not exempted from a high school community service requirement that plaintiffs claimed infringed on the parents' right to teach their child moral values. 73 F.3d 454 (2d Cir. 1996); *see also Fleischfresser v. Dirs. of Sch. Dist. 200*, 15 F.3d 680 (7th Cir. 1994) (parents were unsuccessful in enjoining a school from using a series they found objectionable in a supplemental reading program); *Brown v. Hot, Sexy & Safer Prods.*, 68 F.3d 525 (1st Cir. 1995) (parents were not allowed to exempt their children from a school sex education program).

The Does' parental rights claim fails because the defendants have not burdened their right to make decisions concerning the care or control of their son. The fundamental right to parent, for example, prevents a state from requiring parents to send their children to public school rather than a private religious school because such a law "unreasonably interferes with the liberty of parents

and guardians to direct the upbringing and education of children under their control." *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534–35 (1925). A law requiring parents to send their children to school past the eighth grade also violates a parent's constitutional rights. *Wisconsin v. Yoder*, 406 U.S. 205, 234 (1972). Moreover, a state law affording visitation rights to grandparents "infringes on that fundamental parental right." *Troxel*, 530 U.S. at 67. In this case, however, the Alpine School District has done nothing to limit the Does' choices regarding how to parent JD. The district did not prevent the Does from forbidding JD from engaging in premarital sex. Nor do they complain that the district required JD to attend a sex education class that undermined values that they sought to instill in their son. Instead, the core of their complaint is that by affording students ample free time during the last week of classes, the Alpine School District did not do enough to aid their efforts as parents to prevent JD from having sex. But the Does cannot wield the constitutional right to parent as a sword to require the district to adopt policies that help them to direct and control their son's choices. The Does have not provided any authority supporting the proposition that the government has a constitutional duty to help them parent JD. Because the Alpine School District did not prevent the Does from making decisions regarding the upbringing of their son, it did not infringe their parental rights under the Fourteenth Amendment.

   Even if the Does could articulate some burden on their right to parent, such a burden would not be sufficient to countermand the Alpine School District's authority to create general policies for the students in its care. As discussed above, the constitutional right to parent exists only "up to a point" and does not always permit parents to control their child's public education. *Swanson*, 135 F.3d at 700. By attempting to force the school district to adopt policies affecting the entire student body in order to help them achieve their parenting objectives, the Does seek to impermissibly

5

"oust" the district's authority. Even if the Does altered their demanded relief to impact only their child, a request to excuse JD from the schedule of the last week of school would amount to an exemption from the school program allowing students time to discuss grades with their teachers. As stated above, it is well established that parents do not have a constitutional right to control or exempt their children from specific school programs.[2]

Finally, the Does argue that their parental rights were violated because the Alpine School District did not tell them about the attendance policy during the last week of school, depriving them of the opportunity to make decisions about how to parent JD in light of that information. In essence, the Does assert that the Fourteenth Amendment right to parent includes a right to receive notice of attendance policies. The Does, however, provided no caselaw to support their right-to-notice theory. Absent any authority to support this novel interpretation of the right to parent, the court concludes that it does not include a right to notice of internal school attendance policies.

In short, while it may be wise for schools to adhere to attendance policies and keep parents informed of students' whereabouts and schedules, the school's actions and omissions have not violated the plaintiffs' constitutional right to parent their child.

## II. FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT

The plaintiffs allege that the Alpine School District's practice of affording students long periods of unsupervised time during the last week of the school year provided a window of

---

[2] The Does also argue that, under Utah's common-law *in loco parentis* principles, the defendants had a "custodial duty of protection" to supervise JD while he was in their custody. *See Young v. Salt Lake City Sch. Dist.*, 52 P.3d 1230, 1234 (2002). But the plaintiffs have failed to explain how this tort-law principle applies to his constitutional claim. Nor have they pointed to any authority that the Fourteenth Amendment incorporates this doctrine. Accordingly, the court rejects this argument.

opportunity for JD to engage in premarital sex while on school grounds. They argue that this practice violated JD's and the Does' fundamental right to practice their religion. The court disagrees.

The Free Exercise Clause of the First Amendment "prevent[s] the government from impermissibly burdening an individual's free exercise of religion." *Swanson*, 135 F.3d at 702. A plaintiff's free exercise of religion is burdened if "the challenged action is coercive or compulsory in nature." *Bauchman v. W. High Sch.*, 132 F.3d 542, 557 (10th Cir. 1997). In *Bauchman v. West High School*, for example, a student claimed her free exercise right was infringed when her music teacher required her to perform Christen songs. *Id.* at 546. However, because she was given the choice to not participate in singing the religious songs without her grade being affected, the court found that there was no coercion in the teacher's actions. In order to prevail, the plaintiff needed to allege more than the fact that the songs selected "offended her personal religious beliefs"; she would have to allege facts "demonstrating the challenged action created a burden on the exercise of her religion." *Id.* at 557.

The Does' claim under the Free Exercise Clause fails because they have not alleged that the Alpine School District coerced them to abandon a religious tenet or belief. First, the school district did not coerce JD into acting against his religious beliefs. He freely chose to have premarital sex with his girlfriend, even though this was against the teachings of his religion.

Second, the Alpine School District did not coerce the Does to act contrary to their religious principles. The Does allege that they have a religious duty to encourage JD to abstain from premarital sex. The district did nothing to pressure or force the Does to refrain from passing on those teachings to her son. The Does instead argue that the district's policies allowed JD a window of opportunity to have sex, thwarting their attempts to prevent him from doing so. In essence, the

Does assert that the Alpine School District did not do enough to help them perform their religious obligations. But the Free Exercise Clause does not impose such a duty on government entities. "The Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 440 (1988). Accordingly, the Supreme Court has held that this clause does not impose a duty to aid religious practices:

> Never to our knowledge has the Court interpreted the First Amendment to require the Government *itself* to behave in ways that the individual believes will further his or her spiritual development or that of his or her family. The Free Exercise Clause simply cannot be understood to require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens. . . . The Free Exercise Clause affords an individual protection from certain forms of governmental compulsion; it does not afford an individual a right to dictate the conduct of the Government's internal procedures.

*Bowen v. Roy*, 476 U.S. 693, 699–700 (1986). Here, the Does argue that the Free Exercise Clause requires the Alpine School District to modify its policies to help them perform their religious duty to raise JD to avoid premarital sex. But the district has no constitutional duty to modify its internal procedures to further the Does' religious goals. Because the Does have not alleged that the district coerced them to abandon a tenant of their religion, their Free Exercise Clause claim fails as a matter of law.

Even if the school's practice did burden the Does' religious practice, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice*." Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531 (1993). A law is not neutral if its object is "to infringe upon or restrict practices because of their religious motivation." *Id*. at 533. A rule that is

8

not neutral and generally applicable is generally subject to strict scrutiny. *Id.* at 546. Otherwise, the rule or law is judged according to rational basis review, meaning "it must simply be rationally related to a legitimate government end." *United States v. Hardman*, 297 F.3d 1116, 1126 (2002).

The school custom of giving students unsupervised time after being released early from class during the last week of school applies equally to all students regardless of religion, and it was not created with the motivation of infringing on religious practices. Therefore, it is neutral and generally applicable, and the rational basis test applies. The custom is rationally related to a legitimate end: giving students time to work with teachers to help their grades. Therefore, the Does' free exercise argument would fail even if their exercise of religion were incidentally burdened.

For these reasons, there is no violation of the plaintiffs' First Amendment free exercise rights.

### III.   HYBRID RIGHTS EXCEPTION

The plaintiffs have also argued that the hybrid rights exception from *Smith* applies and subjects the First Amendment and the Fourteenth Amendment issues to strict scrutiny rather than rational basis review. *Employment Div. v. Smith*. 494 U.S. 872, 881–82 (1990). This exception states that "when a free exercise claim is coupled with some other constitutional claim . . . , heightened scrutiny may be appropriate." *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1295 (10th Cir. 2004). However, this exception only applies when there is a "'fair probability, or a likelihood' of success on the companion claim." *Id*. (citation omitted). Because neither constitutional claim is likely to be successful, as discussed above, the hybrid exception does not apply.

### IV.   NEGLIGENCE CLAIM

The plaintiffs alleged that the defendants negligently breached their duty of care toward JD, causing him emotional distress. The defendants argued that the Governmental Immunity Act

9

of Utah (GIA) shields them from liability. *See* UTAH CODE § 63G-7-201(4). During the hearing on the instant motion, the Does raised novel arguments concerning the application of the GIA to this action. They asserted that while the GIA affords immunity to the individual defendants, it does not immunize the Alpine School District form liability. The Does also stated that they may seek leave to amend the complaint to assert equitable remedies for the negligence claim.

Because the court dismisses the constitutional claims, the only remaining basis for retaining jurisdiction over the negligence claim is supplemental jurisdiction. "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim raises a novel or complex issue of State law [or] . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c). In determining whether to exercise supplemental jurisdiction, federal courts weigh "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Courts have consistently found that when all federal claims have been dismissed, these factors generally weigh in favor of dismissal of the state-law claims. *Id.* ("When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." (footnote omitted)); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

In weighing the values of judicial economy, convenience, fairness, and comity in light of the above-cited caselaw, the court elects to remand the negligence claim to state court rather than resolve the dispute concerning dismissal of the negligence claim. The Does have raised an admittedly novel interpretation of the Utah GIA that should be resolved by a state court rather than a federal court. Additionally, this claim is in the early stage of the litigation, and the court has not invested time in becoming familiar with the evidence concerning the facts of this case.

## CONCLUSION

For the above-stated reasons, the court grants the defendants' motion to the extent that it seeks dismissal of the Fourteenth Amendment claim and the First Amendment claim. Dismissal of these claims is with prejudice. The court declines to retain supplemental jurisdiction over the remaining negligence claim and does not resolve the motion to dismiss as to this cause of action. The court directs the clerk to remand this action to the Forth Judicial District of the State of Utah.

DATED June 21, 2023.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge